UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| MICHAEL SALYERS, et ux., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 6: 13-109-DCR |
| ) | |
| V. ) | |
| ) | |
| LAUREL COUNTY DETENTION ) | **MEMORANDUM OPINION** |
| CENTER, et al., ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\* \*   \*\*\*

This matter is pending for consideration of the Motion to Dismiss/Motion for Judgment on the Pleadings filed by Defendants Laurel County Detention Center; Laurel County, Kentucky; Laurel County Fiscal Court; Jamie Mosley; David Westerfield; Roy Crawford; Danny Smith; Teddy Benge; Jeff Book; Billy Oakley; and Noah Baker (collectively, the "Laurel County Defendants"). [Record No. 32][1] For the reasons set forth below, the Court will grant the relief sought, and dismiss the plaintiffs' claims against these defendants.

**I.**

This matter arises out of Plaintiff Michael Salyers' ("Salyers") confinement at the Laurel County Detention Center. Salyers entered a guilty plea to conspiring to buy votes on February 8, 2012. [*See United States v. Michael Salyers, et al.*, U.S. Dist. Ct., E.D. Ky., Central Div. at

---

[1] The original motion also asserted that the Laurel County Defendants were entitled to immunity from the plaintiffs' claims. However, based on plaintiffs' concessions, the question of immunity is moot. [Record No. 39, p. 13]

-1-

Lexington, Case No. 5: 11-143-KKC; Record No. 56.] Following his plea, Salyers was sentenced by United States District Judge Karen Caldwell to sixty days' incarceration, followed by a one-year term of supervised release. [*Id.*, at Record No. 93]

Salyers alleges that, on the first day he was confined, he was medically evaluated and his vital signs were normal.[2] His blood pressure was 138/74 and his heart rate was 80 bpm. [Record No. 27, ¶24] However, he alleges that on the following day, "corrections officers" found him clutching his chest, complaining of pain, nausea, and shortness of breath, and that he had vomited. [*Id.*, ¶25] Salyers was brought to another floor in the facility for medical monitoring. At that time, his blood pressure had increased to 207/124 and his heart rate had increased to 120 bpm. [*Id.*, ¶26] At some point while he was being evaluated by a nurse or a doctor, Salyers told medical personnel that "he had been taking Xanax on the street." [*Id.*, ¶27] The plaintiffs assert that Salyers was mis-diagnosed by a nurse, guard, and other unknown defendants. Medical records indicate that he was placed on medical watch per detoxification procedures based on the belief that Salyers was suffering from withdrawal symptoms. [*Id.*] Later tests indicated that Salyers had actually suffered a heart attack.

Salyers and his wife, Cathy Salyers, filed this action on June 3, 2013, asserting claims against the following parties: (i) United States Bureau of Prisons; (ii) Charles E. Samuels, Jr.;

---

[2] Prior to Salyers commencing service of his sentence, the Bureau of Prisons ("BOP") received his presentence investigation report ("PSR"), which indicated that Salyers was in generally good health. [Record No. 27, ¶18, 19] However, the PSR indicated that Salyers was diagnosed with diabetes three years earlier, and that he had been prescribed Effexor for depression and Xanax for anxiety. [*Id.*] Salyers advised detention center staff of those conditions and his medications when he reported for service of his sentence.

(iii) the Laurel County Detention Center[3]; (iv) Laurel County, Kentucky; (v) the Laurel County Fiscal Court; (vi) Jamie Mosley; (vii) David Westerfield; (viii) County Magistrates Roy Crawford, Danny Smith; Teddy Benge; Jeff Book; Billy Oakley; and Noah Baker[4]; (ix) Southern Health Partners, Inc.; and (x) John and Jane Does 1-10. Against the BOP and Samuels, the plaintiffs alleged that the BOP and Samuels were deliberately indifferent to his serious medical needs. They alleged Eighth and Fourteenth Amendment deliberate indifference claims under 42 U.S.C. § 1983 against the Laurel County Defendants, and medical negligence claims against Southern Health Partners, Inc. Mrs. Salyers also has asserted a claim for loss of consortium.[5]

After the plaintiffs amended their original complaint, the Court granted Defendants Samuels' and the United States Bureau of Prisons' ("BOP") renewed motion to dismiss, finding that the plaintiffs' claims against the BOP and the official capacity claims against Samuels were barred by sovereign immunity. Additionally, the Court concluded that the claims against Samuels in his individual capacity were deficient because the plaintiffs did not assert that Samuels expressly authorized, approved, or knowingly acquiesced in any improper conduct. [Record No. 31] Thereafter, the Laurel County Defendants again moved to dismiss the plaintiffs' claims against them under Rule 12(c) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[3] The plaintiffs concede that the Laurel County Detention Center should be dismissed from this action, based on the holding in *Smith v. Franklin Cnty.*, 227 F. Supp. 2d 667 (E.D.K.Y. 2002). [Record No. 38, p. 18]

[4] The plaintiffs concede that Laurel County, Kentucky, is the proper party, and that the claims against the magistrates in their official capacity should be dismissed. [Record No. 38, p. 18]

[5] The plaintiffs correctly note that this is a derivative claim and do not object to the dismissal of this claim.

## II.

The analysis is essentially the same for motions brought under Rule 12(b)(6) and Rule 12(c). On a motion for judgment on the pleadings, the Court may look only to the pleadings themselves and exhibits incorporated by reference into the complaint. *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). In other words, the Court is limited to the facts alleged in the pleadings. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

---

[6] As the defendants note, the plaintiffs make no mention of federal pleading standards post *Iqbal* and *Twombly,* instead citing cases from before the modern pleading requirements. In so doing, the plaintiffs continue to urge the Court to follow the law as they wish it to be, rather than what the law actually is. However — as the Court previously stated — *Iqbal* is applicable and its holdings provide the lens through which this Court views the plaintiffs' Amended Complaint. [Record No. 31, p. 10]

# III.

## A. Deliberate Indifference

The Supreme Court has held that "to state a cognizable claim [under the Eighth Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Therefore, a prisoner must show both "deliberate indifference" and "serious medical needs." *Id*. The Eighth Amendment contains both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294 (1991). The objective component requires the existence of a "sufficiently serious medical need." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). For the purpose of this motion, the defendants do not dispute that Salyers had a serious medical need.[7] [Record No. 39, p. 5] Thus, the determinative issue becomes whether the plaintiffs have sufficiently alleged the subjective component of deliberate indifference.

### i. Individual Laurel County Defendants[8]

"Deliberate indifference" means that prison medical staff knew of the inmate's serious medical needs, but intentionally disregarded an excessive risk of harm to the inmate, or that prison guards or medical staff intentionally prevented the inmate from receiving prescribed

---

[7] Because the defendants concede that Salyers' medical condition was serious, the Court need not address the plaintiffs' arguments on this point, including the lengthy discussion of *Blackmore,* 390 F.3d at 895. [*See* Record No. 38, pp. 6-8.]

[8] The plaintiffs conflate their claims against the Laurel County defendants as individuals and against Laurel County as a governmental entity. Further, to the extent that the plaintiffs attempt to state a claim for supervisory liability, that claim will be dismissed. *See Monell*, 436 U.S. at 691 (liability in a § 1983 action cannot be based on a theory of *respondeat superior*).

treatment or intentionally delayed or denied him access to medical care. *Estelle*, 429 U.S. at 104-105; *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To succeed on a deliberate indifference claim, a plaintiff must show that the official is aware of facts from which he could have inferred that an excessive risk to the health of an inmate existed; the official actually drew the inference that the detainee was at an excessive risk of harm; and, having so inferred, the official failed to take adequate precautions to prevent the harm from befalling the inmate. *Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837). Deliberate indifference may be "manifested by prison doctors in their response to a prisoner's needs or by prison [staff] in *intentionally* denying or delaying access to medical care or *intentionally* interfering with treatment once prescribed." *Estelle*, 429 U.S. at 104 (emphasis added).

The defendants argue that the plaintiffs' claims against them are deficient because there are no facts relating to any specific Laurel County Defendant, nor are there any facts that show that any of the Laurel County Defendants had knowledge of Salyers' condition. *See Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (Knowledge that a prisoner has a serious medical condition "is essential to a finding of deliberate indifference."); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005) (The "subjective component [of knowledge] must be addressed for each defendant individually.") Although the plaintiffs have alleged that Salyers exhibited the symptoms of a heart attack, they fail to claim that any of the individual defendants actually observed those symptoms. [Record No. 27, ¶26] The Amended Complaint states that Salyers begged "Detention Center personnel" to be taken to the hospital, but it does not allege that any of these individual defendants are the officials to

whom Mr. Salyers made those pleas.[9] Nor are any of the individual defendants named as those who placed Salyers on medical watch to follow detoxification procedures. In short, there are no allegations that any of the individual Laurel County Defendants[10] had knowledge of Salyers' serious condition.

The plaintiffs themselves point out the deficiencies in their pleadings, noting that "based [on] the facts in the Amended Complaint, Mr. Salyers has alleged that Laurel County was either grossly negligent in its duties or it has a policy that assumed he was suffering from withdrawal from Xanax and held in a drunk tank, despite his pleas to be taken to the hospital." [Record No. 38, pp. 3-4] Yet deliberate indifference "is a very high standard of culpability, *exceeding* gross negligence." *Ross v. Duggan*, 402 F.3d 575, 590 n.7 (6th Cir. 2004) (emphasis added). It is also insufficient under Sixth Circuit precedent to alleged that the defendants should have perceived Salyers' serious medical risk but did not. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation cannot under our cases be condemned as the infliction of punishment."). Likewise, an incorrect diagnosis by prison medical personnel is insufficient to state a claim for deliberate indifference. Instead, the plaintiffs must assert that officials refused

---

[9] The Amended Complaint references only "corrections officers," "detention center personnel and/or contractors" and a "nurse and/or doctor." The individual Laurel County defendants are not corrections officers, detention center personnel, or nurses and/or doctors.

[10] The individual Laurel County Defendants include David Westerfield, the County Judge Executive, and Defendants Roy Crawford, Danny Smith, Teddy Benge, Jeff Book, Billy Oakley, and Noah Baker, who are all county magistrates. As the Court held previously, "when a plaintiff assert[s] that a high-ranking government official was involved in unconstitutional actions, he or she needs to plead factual information that allows a court to draw reasonable inferences that the official is liable for the misconduct alleged." [Record No. 31, p. 9]

to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince wanton disregard for any serious medical needs. *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752 (5th Cir. 2001). Here, the plaintiffs allegations would allow the Court to plausibly infer that the Laurel County Defendants intentionally refused to treat Salyers or intentionally treated him incorrectly.

### ii. Laurel County

The plaintiffs also seek to hold Laurel County liable as a municipality. As noted above, they concede that the Laurel County Detention Center should be dismissed as a defendant, leaving the Laurel County Fiscal Court and Laurel County, Kentucky, as the defendants subject to such claims. To hold a government entity liable for the deprivation of constitutional rights, a plaintiff must prove that the moving force behind the deprivation was a governmental policy or custom. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Under § 1983, the plaintiffs must identify a policy, connect it to the county defendants (in this case, the Laurel County Fiscal Court and Laurel County), and show injury due to the execution of that policy. *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

Because the plaintiffs do not contend that any written policy exists that led to Salyers' injuries, liability may only arise from custom, if it is "so permanent and well-settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691. The proffered custom is that Laurel County has either failed to train its guards and medical personnel to recognize the difference between drug withdrawal and a serious medical need, or that it has failed to adopt an adequate policy to treat prisoners with symptoms exhibited by Salyers.

The Amended Complaint contains the following allegations regarding these alleged practices:

> The mistreatment suffered by Michael Salyers was part of continuing pattern of misconduct and/or conspiracy, and is the result of policies, procedures, customs and practices of Laurel County, either written or unwritten. These practices constitute an arbitrary use of government power, and show a total, intentional and unreasonable disregard for and the deliberate indifference to the health and well-being and constitutional and common law rights of persons incarcerated at the Laurel County Detention Center, including the Plaintiff. These policies or customs include, but are not limited to: refusal to render necessary medical care in light of emergent situations in order to save money at the expense of inmate health; or a cookie cutter approach to all new inmates with some form of drug use in their past who exhibit signs that may be applicable to drug withdrawal in order to save money by not taking expensive trip[s] to the hospital or even having basic diagnostic tools readily available to determine whether an inmate is undergoing a serious medical condition instead of withdrawal.

[Record No. 27, ¶49] Further, the plaintiffs argue that there has been "at least one other young lady who died under allegedly similar circumstances that has been reported in the news in Kentucky."[11] [Record No. 38, p. 13]

To establish a claim based on inadequate training by a municipality, a plaintiff "must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). In short, the statement that another woman died under similar circumstances, even if true, does not show "a history of abuse" such that the municipality disregarded a known or obvious consequence of his

---

[11] The plaintiffs also attach an unpublished case from Kentucky state court, *White v. Southern Health Partners, Inc.*, Nos. 20120-CA-001092-MR, 2012-CA-001106-MR (June 14, 2013), apparently as factual support of their argument that Southern Health Partners provides inadequate care to inmates. [Record No. 38-1] However, Defendant Southern Health Partners, Inc., is not a party to this motion. And that case occurred in a county other than Laurel County, Kentucky. The case provides no factual support for the plaintiffs' Amended Complaint.

action. *See Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). A plaintiff must have pleaded that "the governmental entity was aware of the unconstitutional acts of its employees and failed to respond." *Sagan v. Sumn Cnty. Bd. Of Educ.*, 726 F. Supp. 2d 868, 886 (M.D. Tenn. 2010). As explained above, no such allegations exist.

Further, the Supreme Court has repeatedly urged caution when courts are asked to infer that the *absence* of a policy reflects a deliberate decision to act unconstitutionally. *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). Where the plaintiffs allege only one incident, rather than alleging that the same problem has repeatedly occurred, the Court is loathe to draw such an inference. Where, as here, a complaint is factually deficient, the plaintiffs are not entitled to fill in the blanks by conducting discovery. *Iqbal,* 556 U.S. at 664-65; *Twombly*, 550 U.S. 544, 559 (2007).

**IV.**

The Amended Complaint offers no more than a sheer possibility that the Laurel County defendants are liable for the misconduct charged. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendants Laurel County Detention Center; Laurel County Kentucky; Laurel County Fiscal Court; Jamie Mosley; David Westerfield; Roy Crawford; Danny Smith; Teddy Benge; Jeff Book; Billy Oakley; and Noah Baker's motion to dismiss or in the alternative motion for judgment on the pleadings [Record No. 32] is **GRANTED**.

2. The claims asserted in this action against these Defendants are **DISMISSED**, with prejudice. The plaintiffs' claims against Southern Health Partners, Inc., remain.

This 21st day of April, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge